UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

EARL SMITH,

           Plaintiff,

v.                                                            Case No. 05-CV-162

ACTUANT CORPORATION,

           Defendant.
_____

## ORDER

On February 11, 2005, pro se plaintiff Earl Smith ("Smith") filed a complaint alleging that his former employer, defendant Actuant Corporation ("Actuant"), discriminated against Smith in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981 on the basis of his race (African American) and disability. Smith also asserts that Actuant terminated his employment in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). On May 15, 2007, Actuant filed a motion for summary judgment asserting that the undisputed facts demonstrate that it did not discriminate or retaliate against Smith. For the reasons stated below, the court is obliged to grant Actuant's motion for summary judgment.

### BACKGROUND

The material facts of the case are undisputed. Smith began working as a packer at Gardner Bender Tools & Supplies ("Gardner Bender"), a subsidiary of Actuant, in June 1998, and he continued working there until he was terminated in April 2005. In March 2004, Kirk Riege ("Riege") became Smith's supervisor. Riege

disciplined Smith three times in 2004 for "unexcused absences." Specifically, on March 24, 2004, Riege issued a written disciplinary report to Smith because Smith was absent on March 10, 2004. On May 19, 2004, Riege suspended Smith for one day because Smith was late for work on March 29, 2004, April 27, 2004, May 14, 2004, and on May 19, 2004. And on July 28, 2004, Riege suspended Smith for three days because Smith was absent on July 27, 2004. On each of the disciplinary reports, Riege wrote, "Earl refused to sign." (Actuant Br. Ex. F.) In his deposition, Smith stated that he did not sign the reports because he disagreed with, or did not understand, the disciplinary reports. (Smith Dep. 44-50, 58-59.) Smith stated at his deposition that he refused to sign the absentee reports on multiple occasions. (*Id.*)

According to Gardner Bender's attendance guidelines, "[a]n attendance slip for Vacation, Personal, and Floating Holiday must be filled out for each occurrence." (Actuant Br. Ex. B.) On October 7, 2004, Riege held a meeting with employees and discussed, among other things, Bender Gardner's attendance policy. In his deposition, Smith recalled that Riege stated that, if possible, employees should give 48 hours advance notice if they were going to be absent and that employees were required to fill out attendance slips. (Smith Dep. 32-34.)

In January 2005, Smith was absent from work for several days, attending a funeral for some portion of those absences. When Smith returned to work, Riege asked Smith to complete an absentee report for absences in January and early February. Smith filled out the absentee reports without signing them. Riege handed the reports back to Smith and said that they were not complete because Smith had

2

not signed them. Smith states that he did not understand why he was required to sign absentee reports pertaining to vacation days that he had already used. On February 10, 2005, Riege issued a written disciplinary report to Smith for "insubordination." According to the description of the incident:

> Earl was asked by his supervisor to fill out an absentee report for the following days he took as time off or was absent. The days include: January 7th, 13th, 14th, 18th, 19th, 26th, February 2nd, and 3rd, 2005. Earl was asked to fill out these reports on January 21st, 27th, and February 4th, 2005. He refused to sign these reports. This refusal is in direct violation of Actuant company rules.

(Actuant Br. Ex. F, 5.) The report provided that "[t]he next incident will result in further disciplinary action up to and including termination." (*Id.*)

Smith was absent again on March 3, 2005, and as a result, he received a one-day suspension which he served on March 9, 2005. (Actuant Br. Ex. F, 6.) The March 8, 2005 disciplinary report regarding the suspension stated that "Earl [Smith] refused to sign," and that "[t]he next incident will result in further disciplinary action up to and including termination." (*Id.*)

On March 11, 2005, Smith missed work because the company had shut down for the day. On April 11, 2005, Riege terminated Smith. According to the April 11, 2005 disciplinary report, Riege asked Smith to complete absentee reports for March 9 and 11, 2005, on five separate occasions: March 10, 14, 31, April 6 and 7, 2005; however, Smith refused to sign the absentee reports. According to the disciplinary report, Smith's refusal to sign the absentee reports violated company policy and was deemed insubordination. (Actuant Br. Ex. F, 8.)

3

Prior to the events leading to Smith's termination, Smith filed a charge of discrimination with the EEOC on September 2, 2004. (Def.'s Answer ¶ 17.) Neither party has made the EEOC complaint a part of the record, but based upon Smith's allegations during his deposition and in his pleadings before this court, Smith likely alleged that Riege disciplined him based upon his race and alleged disability.

**ANALYSIS**

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255.

As noted above, Smith's complaint raises claims of discrimination and retaliation under Title VII and § 1981. Smith alleges that Actuant intentionally

4

discriminated against him by unfairly disciplining him on the basis of his race and disability. A plaintiff alleging race discrimination under Title VII and § 1981 can prove his or her case by using the direct or indirect method of proof. *See Alexander v. Wis. Dep't of Health & Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001). If a plaintiff proceeds under the direct method, he or she may rely on either direct evidence or circumstantial evidence. *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005). Direct evidence is what the employer said or did. "Direct evidence essentially requires an admission by the decisionmaker that his actions were based upon the prohibited animus." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Intentional discrimination may also be established by a plaintiff who establishes a "convincing mosaic" of circumstantial evidence. *Troupe v. May Dept. Stores*, 20 F.3d 734, 737 (7th Cir. 1994). There are three types of circumstantial evidence: suspicious statements or behavior, other employees receiving systematically better treatment (comparative), and a qualified plaintiff was passed over by someone else without plaintiff's characteristic and the employer's reason for the difference is unworthy of belief (pretextual). *Id.* at 736.

Because Smith presents no direct evidence of discrimination, his discrimination claim will be analyzed under the *McDonnell Douglas* burden shifting approach. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In order to survive summary judgment under the burden shifting method, Smith must first establish a prima facie claim by showing that: (1) he belongs to a protected class; (2) his performance met his employer's legitimate expectations; (3) he

5

suffered an adverse employment action; and (4) similarly-situated others not in the protected class received more favorable treatment. *See Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1034 (7th Cir. 2004). If Smith establishes a prima facie claim, the burden shifts to Actuant who may then articulate a legitimate business reason that justified the action it took. *See McDonnell Douglas*, 411 U.S. at 802-03. Once such a reason is presented, the plaintiff must establish by a preponderance of the evidence that the employer's stated reason is merely a pretext for discrimination or retaliation. *See Walker v. Glickman*, 241 F.3d 884, 889 (7th Cir. 2001).

It is undisputed that Smith, as an African-American, is a member of a protected class, and that he suffered an adverse employment action by being terminated. Actuant, however, asserts that Smith was not meeting Actuant's legitimate expectations. Actuant notes that Gardner Bender had an attendance policy that required employees to complete absentee reports any time the employee misses work. (Actuant Br. Ex. B; Defendant's Proposed Findings of Fact ("DPFOF") ¶ 10.) It is undisputed that Smith repeatedly refused to sign the absentee reports and he was progressively disciplined for refusing to do so. (DPFOF ¶¶ 14, 15, 17, 19, 21, 22, 25.) Actuant asserts that Smith's refusal to comply with the attendance policy demonstrates that Smith was not meeting Actuant's legitimate expectations. Actuant also asserts that Smith has not identified a similarly-situated individual not in the protected class who received more favorable treatment.

6

In response, Smith appears to argue that because Gardner Bender's 1989 attendance guidelines used the term "attendance slip," (Actuant Br. Ex. B) instead of "absentee report," he was not required to sign the absentee reports.  Smith also alleges he was not asked to fill out the reports.  However, Actuant first explained its attendance policy to Smith on August 18, 1998, and Smith signed a document acknowledging that he read and understood the policy.  (Smith Dep. 25; Actuant Br. Exs. B and C.)  On September 25, 2002, Smith signed a form acknowledging that he received Actuant's Team Member Handbook, which contained the company's attendance guidelines.  (Smith Dep. 30; Actuant Br. Ex. D.)  And on October 7, 2004, Smith attended a meeting at which his supervisor explained the attendance policies.  (Smith Dep. 32-34; Actuant Br. Ex. E.)  Indeed, Smith admitted at his deposition that despite being asked to sign the absentee reports, he refused to sign them on multiple occasions.  (Smith Dep. 44-50, 58-59.)  And Smith does not dispute Actuant's assertion of fact that all employees were required to complete absentee reports in accordance with Gardner Bender's attendance policy.  (Smith Dep. 92; DPFOF ¶¶ 10 and 11.)  In light of the undisputed facts demonstrating that Smith refused to sign the absentee reports despite the repeated warnings that another "incident will result in further disciplinary action up to and including termination," (Actuant Br. Ex. F, 5-8) and that he was progressively disciplined for refusing to sign the absentee reports in accordance with Gardner Bender's attendance policy, Smith has failed to establish that he was meeting Actuant's legitimate expectations.

Furthermore, Smith has not identified a single employee who was not subject to this requirement, or an employee who refused to complete an absentee report by not signing it and was not disciplined. (DPFOF ¶¶ 11, 16, 20, 26.) Although Smith notes that his replacement was Caucasian, there is no indication that his replacement was not required to complete absentee reports. Because Smith failed to demonstrate that he was meeting Actuant's legitimate expectations, or to identify a similarly situated individual who was treated better than he, Smith has not established a prima facie case of discrimination. As such, Actuant is entitled to summary judgment on Smith's claims of discrimination under Title VII and § 1981.

Smith also alleges that Actuant retaliated against him in violation of Title VII after he filed the charge of discrimination with the EEOC by terminating him for refusing to sign the absentee reports. Title VII prohibits, among other things, an employer from discriminating "against any of [its] employees . . . because [they] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff has two routes to establish a Title VII retaliation claim. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). One is to present direct evidence, or "evidence that establishes without resort to inferences from circumstantial evidence," that the plaintiff engaged in protected activity and as a result suffered the adverse employment action of which the plaintiff complains. *Id.* In the second route, an adaptation of the *McDonnell Douglas* burden shifting method, a plaintiff must demonstrate that after the plaintiff engaged in a statutorily

8

protected activity, the plaintiff was treated less favorably than other similarly situated employees who did not engage in the protected activity, even though the plaintiff was performing his or her job in a satisfactory manner. *Id.*; *see also Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).

Smith's filing of the charge of discrimination with the EEOC in September 2004 constitutes a protected expression. Thus, in order to establish a Title VII retaliation claim, Smith must demonstrate that after he filed the charge of discrimination, he was treated less favorably than other similarly situated Actuant employees who did not file a charge of discrimination, even though he was performing his job in a satisfactory manner.

The sole basis for Smith's claim of retaliation is the fact that he was terminated sometime after he filed his charge. (DPFOF ¶ 32.) Indeed, Smith acknowledged that no one ever counseled him or criticized him because he filed a discrimination charge. (Smith Dep. 99.) In addition, Smith offered no evidence other than the timing of his termination to support his retaliation claim, and "suspicious timing alone . . . does not support a reasonable inference of retaliation." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006) (citing *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000); *see also Stone*, 281 F.3d at 644 ("But we remind that mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue."). Moreover, given that Smith admittedly refused to sign the absentee reports on multiple occasions, Smith has not

9
Case 2:05-cv-00162-JPS   Filed 02/11/08   Page 9 of 11   Document 49

demonstrated that he was performing his job in a satisfactory manner.  Smith also failed to identify a similarly-situated individual who did not file a charge of discrimination and who received more favorable treatment.  Therefore, because Smith cannot establish a prima facie claim of retaliation, Actuant is entitled to summary judgment on this claim.

Finally, Actuant is entitled to summary judgment on Smith's disability claim because Smith has not presented any evidence that creates a genuine issue of material fact that he has a physical or mental impairment that substantially limits his ability to perform a major life function.  *See* 42 U.S.C. § 12102(2)(A) (to be disabled within the meaning of the Americans with Disabilities Act, the individual must have "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 480 (1999).  In his October 15, 2007 affidavit, Smith states that he provided his medical record to Actuant and that "my supervisor also knew about my disability." (Pl.'s Aff. ¶ 1(A).)  Smith states, "I have also been diagnosed with depression and taking medication."  (*Id.* at ¶ 1(B).)  These statements, unsupported by any medical documentation, are Smith's only arguments in support of his contention that he is a person with a disability.  Smith does not allege or show that he has any impairment that substantially limits his ability to perform a major life function.  Therefore, the court grants summary judgment in favor of Actuant with respect to Smith's disability discrimination claim.

In conclusion, Smith's claims of intentional discrimination and retaliation fail at the prima facie level. Specifically, viewing the facts in the light most favorable to Smith, Smith has not established that he was meeting Actuant's legitimate expectations, and he failed to identify a similarly situated individual who was treated better than he. In addition, Smith has not demonstrated that his race, alleged disability, or his filing of the discrimination complaint prompted any difference in treatment or led to his termination, and Actuant demonstrated a legitimate, non-invidious reason for terminating Smith: Smith repeatedly violated Actant's company policy by refusing to sign the absentee reports. Because the record would not permit a reasonable jury to conclude that Smith was meeting Actuant's legitimate expectations, or that Actuant retaliated against Smith for filing the discrimination complaint, the court is obliged to grant Actuant's motion for summary judgment.

Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (Docket # 36) be and the same is hereby **GRANTED** and this action be and the same is hereby **DISMISSED** with prejudice, together with costs as taxed by the clerk of court.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of February, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

11
Case 2:05-cv-00162-JPS    Filed 02/11/08    Page 11 of 11    Document 49